JANE STOW *et al.*, Plaintiffs in Error, *v.* CHRISTOPHER C. ROBINSON, Defendant in Error.

### ERROR TO COOK.

A court of equity has the power to execute a contract, by compelling the parties to receive what they have contracted for, and to perform what they have agreed to do, but has no power to compel a party to receive, or to do something different, from what he has contracted for.

Where one of the parties to a contract is prevented, by the other party, from performing his contract, and is in no default on his own part, an action at law, for all damages he has sustained by a breach of the contract, accrues to him; and this right of action survives to his representatives, in case of his death.

THE complainants, Jane Stow, late Jane Rattray, heir and administratrix of David Rattray, her husband, William H. Stow, and the other heirs of David Rattray, filed their bill of complaint against Christopher C. Robinson, to compel performance of the following agreement:

"Articles of Agreement, made and entered into between C. C. Robinson, of the City of Chicago, County of Cook and State of Illinois, party of the first part, and David Rattray, of the

same place, party of the second part: Witness that the said party of the first part has purchased Block No. Forty-three of the subdivision of the Trustees of the Illinois and Michigan Canal, of Section No. Seven, Township No. Thirty-nine, Range 14 East, third P. M., and said Robinson hereby agrees that he will, in consideration with said Rattray, go on and get the said block subdivided as they shall mutually think proper, and for the interest of the parties, and said Rattray is to dispose of the same, either at private or public sale, as soon as practicable and thought proper by the parties, for one-fourth down, and the remainder to be secured by notes on one, two, and three years from the first day of May, 1849, in equal annual payments, and bearing interest from date. And the said Robinson agrees that he will, upon the payment of one-fourth in money, and secured by notes as stated above, execute his bond for a good and sufficient deed of conveyance when such notes are paid in full, provided such sale shall not average less than twelve hundred dollars in the aggregate. It is further stipulated and agreed, that the said Robinson is first to receive the amount of all money paid out for said purchase of said block or blocks, which is nine hundred and sixty-five dollars, together with interest on the same, then the balance to be equally divided between the parties; for which privilege the said Rattray is to plat, survey or subdivide the said lot or block, and advertise and sell the same at his own expense; which conditions well and truly to be made, the said parties hereto mutually bind themselves, heirs, executors, administrators or assigns.

"Witness their hands and seals this fifteenth day of May, A. D. 1849.

(Signed) · C. C. ROBINSON. [SEAL.]

"In presence of                    DAVID RATTRAY. [SEAL.]"

W. A. BALDWIN."

The bill alleges, that Rattray went on and subdivided the block into seventy-two lots, of which he sold nineteen for $977, and paid Robinson $866.62 of that amount.

That Robinson then stopped the sale of the lots, and refused to permit any more to be sold, or to make any more title-papers.

Bill prays for alternative relief. That defendant may permit complainants, as the representatives of Rattray, to go on and finish the said contract by selling. That complainants may proceed to sell all the lots, and pay Robinson his share of the money, with whatever interest he may be entitled to; or that complainants be permitted to pay defendant said sum of $110.38 and interest, and that the balance of the block be divided between the parties; or that a valuation be fixed on the said property

remaining unsold, and defendant be required to pay complainants one-half the value thereof, after deducting the balance of the money due defendant, of the purchase money of said block. Also for general relief.

As this cause is decided on the ground that it is not a case in which a court of equity can afford relief, the remaining pleadings are not inserted here. The master's report, to whom the matter was referred to take proofs, shows that the allegations in the bill, so far as they are given above, are true.

A decree was entered by the court below, dismissing the bill, and the complainants bring the case, by writ of error, to this court.

GOUDY & WAITE, for Plaintiffs in Error.

T. L. DICKEY, for Defendant in Error.

WALKER, J. This bill proceeds upon the supposition that Rattray, by the agreement, acquired an immediate vested interest in the land itself, and not in the proceeds realized from its sale. And the question whether the court erred in dismissing the bill, depends upon whether that is the true construction to be given to the contract. If it is, and the agreement is capable of being executed, then a specific performance of the contract may be decreed, otherwise the bill was properly dismissed. The contract expressly stipulates for the performance of labor and the exercise of skill, by Rattray, and for a compensation therefor, by a division of the profits which might be realized over and above the original cost of the land. It contained no agreement for any conveyance of any portion of this land at any time from Robinson to Rattray, or of any interest in it. But by the terms of the agreement, Robinson was to retain the title until the sale should be made and the purchase money paid. Until that occurred, it was the manifest intention of the parties that Robinson should not part with the title, and before he even obligated himself to make a conveyance, Rattray was to make the sale.

It is evident, from this agreement, that it was Rattray's skill and personal services for which Robinson contracted. And were others permitted to render that service in effecting sales, it would be to compel him to receive that for which he made no agreement. A court of equity has the power to execute a contract by compelling the parties to receive what they have contracted for, and to perform all they have agreed to do, but has no power to compel a party to receive something else, or to do other or different acts than those agreed to be performed. The

contract for Rattray's skill and services, was not confined to a sale of a sufficient amount of the property to refund the purchase money, but it extended to a sale of every portion of the premises. And so long as any portion of the property remains unsold by Rattray, his part of the contract has not been executed, and for the want of a full and complete performance by him, when the remaining portion is incapable of being performed, a specific execution of the contract cannot be decreed. The parties have failed to provide, by their contract, for the substitution of the heirs or representatives of Rattray, in case of his death, to execute his part of the agreement, by rendering their skill and labor. And although theirs might be equal or even superior, as it is not that for which the other party contracted, he cannot be required to receive it.

But it is insisted that Rattray was prevented, by defendant in error, from executing his part of the agreement by stopping the further sale of lots. If this is true, and Rattray was in no default on his part, an action at law accrued for a breach of the contract for the recovery of all the damages he had thus sustained. Or Rattray might have compelled him by bill, to permit the sale of lots to proceed, and to keep his part of the contract, as he was then able to render the service which Robinson had contracted to receive. If there was such a breach of contract by Robinson as is alleged, the action at law which then accrued, undoubtedly survived to Rattray's representatives. If there is any remedy in this case, it is at law, and clearly not in equity, and the parties must be left to seek their rights in that court.

The decree of the court below is affirmed.

*Decree affirmed.*